IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **PNCEF, LLC,** *et al.*, ) | |
| ) | **PUBLISH** |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION 09-0801-WS-C** |
| ) | |
| **HENDRICKS BUILDING SUPPLY** ) | |
| **LLC,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

**ORDER**

This matter comes before the Court on plaintiff's Motion for Default Judgment (doc. (20).[1]

**I.  Background.**

Plaintiff, PNCEF, LLC ("PNCEF"), filed the Complaint (doc. 1) against defendants, Hendricks Building Supply, LLC ("Hendricks Building") and Hendricks Companies, Inc. ("Hendricks Companies"), in this District Court back on December 9, 2009.[2] The Complaint

---

[1] The Court has designated this Order for publication because it addresses recurring issues concerning a plaintiff's burden and the quantum of proof needed for a default judgment. In so doing, the Court does not suggest that the shortcomings in plaintiff's evidentiary submission in this case are more pronounced than those of other default judgment movants in other cases that the undersigned has reviewed; to the contrary, the problems identified here are quite typical of those encountered in other default judgment cases in this Court's recent experience. By designating this Order for publication, the undersigned hopes that it will be instructive to other litigants of the applicable standards and requirements with which a movant seeking default judgment must comply.

[2] The Complaint does not specifically set forth the basis of federal subject matter jurisdiction; however, the Complaint does allege that plaintiff and defendants are citizens of different states and demands judgment in an amount exceeding $125,000. On that basis, it appears that plaintiff has properly invoked federal jurisdiction pursuant to the diversity of citizenship provisions of 28 U.S.C. § 1332.

contains well-pleaded factual allegations that Hendricks Building entered into a lease agreement with PNCEF's predecessor in August 2005 for the lease of certain specified equipment.[3] Plaintiff expressly pleads that PNCEF "is the successor in interest" to the original lessor named in that agreement. (Doc. 1, ¶ 1.) The term of lease was to be 60 months, with Hendricks Building making monthly rental payments in the amount of $3,763.79. (Doc. 1, Exh. A, at 1.) According to the plain language of the lease, if Hendricks Building defaulted on its payment obligations, the lessor was entitled to "require Lessee to immediately pay Lessor … a sum equal to the Stipulated Loss Value,"[4] to "require Lessee to deliver the Equipment to Lessor," and to "repossess the equipment without court order." (Doc. 1, Exh. A, ¶ 14.) The lease agreement further provides that Hendricks Building "agrees to pay all of Lessor's costs of enforcing Lessor's rights against Lessee … including reasonable attorney's fees." (*Id.*)[5]

The Complaint also alleges that defendant Hendricks Companies provided an absolute, unconditional guaranty on the Hendricks Building lease. In that regard, the Complaint and its attached exhibits assert that Hendricks Companies executed a "Cross Corporate Guarantee" on August 3, 2005, by which it guaranteed PNCEF's predecessor "prompt payment, when due, whether by acceleration or otherwise, of all rents, liabilities and other indebtedness now existing and hereafter arising of Hendricks Building" under the lease, as well as "the performance and

---

[3] According to the lease document appended to the Complaint, Hendricks Building leased a Wise 8800E Door & Jamb Machining Center with accessories, a Wise 2400 Door & Jamb Assembly Machine with accessories, a Wise 4000 Auto Door Loader with accessories, and a Simms VN4+MP MultiChannel Door Assembly Machine. (Doc. 1, Exh. A, at Schedule A.)

[4] The term "Stipulated Loss Value" is defined in the lease agreement as "an amount equal to: (i) the total of all Rent and any other amounts, if any, due with respect to such Equipment as of the date of payment of the Stipulated Loss Value, plus (ii) all future Rent with respect to such Equipment, plus (iii) the then estimated FMV of such Equipment as of the end of the Initial Term of Lease for such Equipment (assuming no loss or damage)." (Doc. 1, Exh. A, ¶ 10.)

[5] The proper reading of Paragraph 14 of the lease agreement is complicated by an errant cut-and-paste of a block of text that unhelpfully jumbles subsections (iv) and (v) of that paragraph by inserting certain language (specifically, the sentence fragments "remedy available at law or in equity. Lessee agrees to pay all of Lessor's costs of enforcing Lessor's rights against Lessee,") in the wrong clause. Nonetheless, the language taken as a whole unquestionably supports a conclusion that the lease agreement provides for the above remedies in the event of lessee default.

observance of all the provisions of the Lease to be performed and observed by" Hendricks Building. (Doc. 1, Exh. A, at 7.)

According to the Complaint, both Hendricks Building and Hendricks Companies "failed and refused to make at least six payments to PNC, as required by the Lease." (Doc. 1, ¶ 12.) That failure to make lease payments amounts to a default under the terms of the lease agreement. (*Id.*, ¶ 13; Exh. A, ¶ 13(i).)

On the basis of the foregoing well-pleaded factual allegations, PNCEF brought claims against Hendricks Building and Hendricks Companies for Breach of Contract (Count I), Open Account (Count II), and Replevin (Count III). Count I proceeded on the theory that PNCEF had provided the subject equipment to defendants, but that defendants had breached their respective contractual obligations, such that judgment should be entered against both defendants, separately and severally, in the amount of $126,674.25, plus costs and attorney's fees. Count II asserted that Hendricks Building and Hendricks Companies had not made payment on their account for leasing the equipment, that the account remained open, unpaid and overdue, and that judgment should be entered against defendants as described in Count I. Finally, via the replevin cause of action in Count III, PNCEF maintained that it was entitled under the terms of the lease "to immediately retake possession of the Equipment" and requested judgment "permitting PNC to immediately enter upon the property of Hendricks and retake possession of the Equipment." (Doc. 1, at 7.)

The court file reflects that plaintiff perfected service of process on both defendants via private process server on June 3, 2010. (Doc. 15.)[6] Yet defendants have never appeared, filed

---

[6] In particular, the file shows that PNCEF served S. Kenneth Hendricks, who is the registered agent for service of process for both defendants, at an address in Daphne, Alabama, by giving copies of the summons and complaint to Sarah Hendricks. The Court takes notice that the current edition of the *AT &T Real Yellow Pages* has a listing for "S. Kenneth Hendricks" at the precise address at which service was performed. Moreover, defendants have not challenged the sufficiency of service of process, and the court file does not reveal any obvious defects that might reasonably call jurisdiction into question. *See generally Hemispherx Biopharma, Inc. v. Johannesburg Consol. Investments*, 553 F.3d 1351, 1360 (11th Cir. 2008) ("Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served.") (citation omitted); *In re Worldwide Web Systems, Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003) ("Generally, where service of process is insufficient, the court has no power to render judgment and the judgment is void.").

responsive pleadings, or taken any other action to defend themselves against the allegations in PNCEF's Complaint. In recognition of these circumstances, the undersigned entered an Order (doc. 18) on July 9, 2010, granting plaintiff's motion for entry of default pursuant to Rule 55(a), Fed.R.Civ.P. On July 13, 2010, a Clerk's Entry of Default (doc. 19) was entered as to both defendants, with a copy of that document mailed to Hendricks Building and Hendricks Companies at the same address where service of process was achieved. Yet defendants still failed to appear or otherwise to defend in this action, despite actual notice that default proceedings have been initiated against them. Defendants have received all the notice to which they are entitled, and have chosen not to defend their interests or to participate in these proceedings.

On August 12, 2010, plaintiff filed a Motion for Default Judgment (doc. 20) pursuant to Rule 55(b)(2), Fed.R.Civ.P. In that Motion (which is supported by accompanying declarations), plaintiff requested entry of a default judgment against defendants in the amount of $145,675.39, as well as a judgment authorizing PNCEF "to enter upon the property of Defendants and re-take possession of the Equipment." (Doc. 20, at 4.)

**II.     Analysis.**

   *A.     Entry of Default Judgment is Appropriate.*

In this Circuit, "there is a strong policy of determining cases on their merits and we therefore view defaults with disfavor." *In re Worldwide Web Systems, Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003); *see also Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. and Canada*, 674 F.2d 1365, 1369 (11th Cir. 1982) ("Since this case involves a default judgment there must be strict compliance with the legal prerequisites establishing the court's power to render the judgment."). Nonetheless, it is well established that a "district court has the authority to enter default judgment for failure ... to comply with its orders or rules of procedure." *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985).

Where, as here, a defendant has failed to appear or otherwise acknowledge the pendency of a lawsuit for more than three months after being served, entry of default judgment is appropriate. Indeed, Rule 55 itself provides for entry of default and default judgment where a defendant "has failed to plead or otherwise defend as provided by these rules." Rule 55(a), Fed.R.Civ.P. In a variety of contexts, courts have entered default judgments against defendants

who have failed to appear and defend in a timely manner following proper service of process.[7]
In short, then, "[w]hile modern courts do not favor default judgments, they are certainly appropriate when the adversary process has been halted because of an essentially unresponsive party." *Flynn v. Angelucci Bros. & Sons, Inc.*, 448 F. Supp.2d 193, 195 (D.D.C. 2006) (citation omitted). That is precisely what Hendricks Building and Hendricks Companies have done here. Despite being served with process more than three months ago, both defendants have elected to remain silent, needlessly stalling the progress of this litigation.

The law is clear, however, that defendants' failure to appear and the Clerk's Entry of Default do not automatically entitle PNCEF to a default judgment in the requested (or any) amount. Indeed, a default is not "an absolute confession by the defendant of his liability and of the plaintiff's right to recover," but is instead merely "an admission of the facts cited in the Complaint, which by themselves may or may not be sufficient to establish a defendant's liability." *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp.2d 1353, 1357 (S.D. Ga. 2004); *see also Nishimatsu Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1204 (5th Cir. 1975) (similar); *Descent v. Kolitsidas*, 396 F. Supp.2d 1315, 1316 (M.D. Fla. 2005) ("the defendants' default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint states a claim for relief"). Stated differently, "a default judgment cannot stand on a complaint that fails to state a claim." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997); *see also Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) ("A default defendant may, on appeal, challenge the sufficiency of the complaint, even if he may not challenge the sufficiency of the proof.").

In light of these principles, the Court has reviewed the Complaint and is satisfied that it sets forth viable causes of action against Hendricks Building and Hendricks Companies under

---

[7] *See, e.g., In re Knight*, 833 F.2d 1515, 1516 (11th Cir. 1987) ("Where a party offers no good reason for the late filing of its answer, entry of default judgment against that party is appropriate."); *Matter of Dierschke*, 975 F.2d 181, 184 (5th Cir. 1992) ("when the court finds an intentional failure of responsive pleadings there need be no other finding" to justify default judgment); *Kidd v. Andrews*, 340 F. Supp.2d 333, 338 (W.D.N.Y. 2004) (entering default judgment against defendant who failed to answer or move against complaint for nearly three months); *Viveros v. Nationwide Janitorial Ass'n, Inc.*, 200 F.R.D. 681, 684 (N.D. Ga. 2000) (entering default judgment against counterclaim defendant who had failed to answer or otherwise respond within time provided by Rule 12(a)(2)).

Alabama law. In particular, the Complaint includes specific allegations that Hendricks Building entered into a lease agreement for certain equipment, that PNCEF is the successor in interest for the original lessor as to that agreement, and that Hendricks Building defaulted on its lease obligations by failing and refusing to make multiple monthly lease payments in accordance with the lease agreement. Moreover, the Complaint alleges that Hendricks Companies executed an absolute, unconditional guaranty of Hendricks Building's obligations under the lease agreement, then failed and refused to comply with the terms of that guaranty by not stepping up to make lease payments when Hendricks Building ceased paying. These factual allegations appear adequate to state viable causes of action under Alabama law for breach of contract and open account.[8] Because all of these well-pleaded factual allegations in the Complaint are deemed admitted by virtue of defendants' default, and because they are sufficient to state claims under Alabama law, the Court finds that Hendricks Building and Hendricks Companies are liable to PNCEF.

Simply put, entry of default judgment against both defendants is appropriate pursuant to Rule 55, given their failure to appear after service of process and the sufficiency of the well-pleaded factual allegations of the Complaint (all of which defendants have admitted) to establish their liability to PNCEF on the breach of contract and open account theories set forth in Counts One and Two.

### B. *Plaintiff's Proof of Damages.*

Notwithstanding the propriety of default judgment against Hendricks Building and Hendricks Companies, it remains incumbent on plaintiff to prove the amount of damages to which it is entitled. "While well-pleaded facts in the complaint are deemed admitted, plaintiffs' allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages." *Virgin Records America, Inc. v. Lacey*, 510 F. Supp.2d 588, 593 n.5 (S.D. Ala. 2007); *see also Eastern Elec. Corp. of New Jersey v. Shoemaker Const. Co.*, 652 F. Supp.2d 599, 605 (E.D. Pa. 2009) ("A party's default

---

[8] *See, e.g., Barrett v. Radjabi-Mougadam*, 39 So.3d 95, 98 (Ala. 2009) (elements of breach of contract claim under Alabama law are valid contract, plaintiff's performance, defendant's nonperformance, and damages); *Christy v. Smith Mountain, Inc.*, 855 So.2d 1103, 1106 (Ala.Civ.App. 2003) (complaint stated claim for unpaid account by alleging that defendant owed plaintiff sum certain pursuant to agreement between parties for sale of materials).

does not suggest that the party has admitted the amount of damages that the moving party seeks."). Even in the default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see also Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects the basis for award); *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818 (8th Cir. 2001) (affirming lower court's decision not to award damages on default judgment, where requested damages were "speculative and not proven by a fair preponderance of the evidence"); *Natures Way Marine, LLC v. North America Materials, Inc.*, 2008 WL 1776946, *1 (S.D. Ala. Apr. 16, 2008) (in default judgment setting, district court has obligation "not to award damages that are uncertain or speculative").[9]

The monetary damages sought by PNCEF in this action consist of the Stipulated Loss Value and the attorney's fees expended in attempting to enforce the lease agreement. Both types of monetary damages are expressly contemplated by the lease agreement. In the event of default

---

[9] In that regard, the Eleventh Circuit has explained that "[f]ederal law similarly requires a judicial determination of damages absent a factual basis in the record," even where the defendant is in default. *Anheuser Busch*, 317 F.3d at 1266. Ordinarily, unless a plaintiff's claim against a defaulting defendant is for a sum certain, the law "requires the district court to hold an evidentiary hearing" to fix the amount of damages. *S.E.C. v. Smyth*, 420 F.3d 1225, 1231 (11th Cir. 2005). However, no hearing is needed "when the district court already has a wealth of evidence from the party requesting the hearing, such that any additional evidence would be truly unnecessary to a fully informed determination of damages." *Id.* at 1232 n.13; *see also Flynn v. Extreme Granite, Inc.*, 671 F. Supp.2d 157, 160 (D.D.C. 2009) (district court is not required to hold hearing to fix damages in default judgment context as long as it ensures there is a basis for damages specified); *Eastern Elec. Corp.*, 652 F. Supp.2d at 605 ("In considering the amount of damages ..., the Court may make its determination by conducting a hearing or by receiving detailed affidavits from the claimant."); *Virgin Records*, 510 F. Supp.2d at 593-94 ("Where the amount of damages sought is a sum certain, or where an adequate record has been made via affidavits and documentary evidence to show ... damages, no evidentiary hearing is required."); *Natures Way Marine, LLC v. North American Materials, Inc.*, 2008 WL 801702, *3 (S.D. Ala. Mar. 24, 2008) ("Although the trial court must make determinations as to the amount and character of damages, it is not necessary to conduct an evidentiary hearing to fix damages if the amounts sought by plaintiff are adequately supported by supporting affidavits and other documentation."). In this case, PNCEF has not requested a damages hearing, but has instead submitted evidence in support of its requested damages amount. In light of the foregoing authorities and circumstances, the damages determination will stand or fall on PNCEF's written evidentiary submission, without the need for a full-blown hearing.

(which has been established by the well-pleaded factual allegations of the Complaint), the lease agreement authorizes the lessor to require the lessee "to immediately pay Lessor, as compensation for loss of Lessor's bargain … a sum equal to the Stipulated Loss Value," and also to require the lessee "to pay all of Lessor's costs of enforcing Lessor's rights against Lessee … including reasonable attorney's fees." (Doc. 1, Exh. A, ¶ 14.) Therefore, both the Stipulated Loss Value and the attorney's fees expended in enforcing PNCEF's rights against Hendricks Building are properly recoverable by PNCEF as damages for both the breach of contract and the open account causes of action. The remaining question is the proper valuation of each of those components of monetary damages.

As noted *supra*, the term "Stipulated Loss Value" is defined in the lease agreement as equating to (i) the total delinquent rent and other amounts due on the equipment, plus (ii) all future rent owed on that equipment, plus (iii) the estimated fair market value of the equipment as of the end of the initial lease term. In support of its Motion for Default Judgment, plaintiff offers the Declaration of Tara Love, who is a "Lawsuit Coordinator" for PNCEF. Love explains the Stipulated Loss Value calculation as follows: "Pursuant to the express terms of the Lease, Defendants owe PNC $22,584.74 in delinquent payments, $2,634.66 in late fees, $56,456.85 in future payments which are accelerated pursuant to the express terms of the Lease, and $45,000.00 as the future market value for the Equipment, for a total amount due and owing to PNC from Defendants under the Lease of $126,674.25." (Love Decl., ¶ 7.)

The problem is that the record is devoid of evidence of how any of these figures were calculated, but is instead confined to the conclusory Love Declaration listing those amounts in summary fashion. Presumably, it would be a simple matter for plaintiff to produce a ledger or other backup documentation showing the due dates and amounts of the delinquent payments, and to provide testimony in declaration form explaining how the late fees and future payment amounts were computed and demonstrating the factual and contractual basis for each. But plaintiff has not done so, instead asking the Court to accept on faith that the bare, unadorned payment and late fee numbers presented in the Love Declaration are accurate. What's more, plaintiff submits a fair market value estimate of $45,000 for the equipment, without a trace of evidence of the factual underpinnings of this figure. Given the current state of the record, the Court has no idea where this $45,000 valuation originated and would be adopting it in a blind act of guesswork and speculation. This sort of judicial leap of faith in fixing the amount of a default

judgment is fundamentally incompatible with the bright-line requirement that a plaintiff seeking a default judgment must prove its damages by record evidence. Rather than merely telling the Court in summary fashion what its damages are, a plaintiff seeking default judgment must show the Court what those damages are, how they are calculated, and where they come from, by reference to the lease agreement, appropriate back-up documentation, and witness testimony as appropriate. This was not done here.

Nor does the record, as presently formulated, provide a reasonable evidentiary basis for computing the attorney's fee component of any damages award. Again, the lease agreement obligated Hendricks Building "to pay all of Lessor's costs of enforcing Lessor's rights against Lessee … including reasonable attorney's fees." (Doc. 1, Exh. A, ¶ 14.) But the record is devoid of evidence of the reasonable attorney's fees that PNCEF has actually incurred in enforcing its rights in this action. Rather than presenting such evidence, plaintiff submits the declaration of its counsel of record, who avers, "I believe that a fee of 15% of the fund to be collected, or $19,001.14, is reasonable" in this case. (Clark Decl., ¶ 8.) But this evidence answers the wrong question. The Court's task is not to ascertain what a hypothetically reasonable attorney's fee might be and to award that amount to plaintiff, but is instead to determine PNCEF's actual attorney's fee incurred in enforcing its rights against Hendricks Building in this matter, and to ascertain whether that actual figure (not a hypothetical fee untethered to PNCEF's actual financial commitment) is a "reasonable attorney's fee" within the ambit of Paragraph 14 of the lease agreement. On this record, the Court cannot ascertain what PNCEF's actual legal costs have been, much less make any judgment as to their reasonableness.

**III. Conclusion.**

The Court is sympathetic of the practical realities confronting plaintiffs seeking entry of default judgment. After all, many defendants who choose to default on their litigation obligations are effectively judgment-proof, such that a paper judgment in any amount may be of limited value to the plaintiff because of the difficulty or impossibility of collecting on same. In recognition of this dynamic, plaintiffs are often reticent to expend substantial resources on their evidentiary presentation for default judgment, given the likelihood that such investment may not be recouped in execution on that judgment. In other words, they do not want to send good money after bad. That business judgment is understandable. But the law is clear that a plaintiff seeking default judgment must prove its damages, and that a district court cannot enter a default

judgment awarding money damages that are uncertain or speculative on the record before it. For that reason, the Court must insist on a detailed evidentiary submission demonstrating the nature, source, factual basis, and method and manner of computation of each component of money damages sought by a plaintiff in default judgment proceedings, antecedent to award of same. That has not been done here.

In light of the foregoing, plaintiff is **ordered**, on or before **September 29, 2010**, to file a supplemental evidentiary submission consisting of detailed documentation (in the form of affidavits and/or declarations, plus supporting exhibits) to establish its claimed money damages against defendants. Upon filing of those materials, the Court will take the Motion for Default Judgment (doc. 20) under submission.

DONE and ORDERED this 10th day of September, 2010.

s/WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE