IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PNCEF, LLC, *et al.*, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION 09-0801-WS-C |
| ) | |
| HENDRICKS BUILDING SUPPLY ) | |
| LLC, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## ORDER

This matter comes before the Court on plaintiff's Motion for Default Judgment (doc. 20) and Supplemental Motion for Default Judgment (doc. 24). The Court having previously determined that plaintiff is entitled to entry of default judgment against both named defendants, the only remaining task is to fix the amount of damages.

**I.      Relevant Background.**

Plaintiff, PNCEF, LLC, brought this action against Hendricks Building Supply, LLC and Hendricks Companies, Inc. to enforce a lease agreement executed by Hendricks Building for the lease of certain equipment, as well as an unconditional guaranty on that lease agreement executed by Hendricks Companies. Defendants had failed to make at least a half dozen lease payments, constituting a default under the plain terms of the lease agreement. Although PNCEF perfected service of process on both defendants on June 3, 2010, neither defendant ever appeared, filed a responsive pleading, or otherwise took action to defend itself against the claims in the Complaint. Based on these circumstances, the undersigned entered an Order (doc. 18) on July 9, 2010, granting plaintiff's motion for entry of default pursuant to Rule 55(a), Fed.R.Civ.P. A Clerk's Entry of Default (doc. 19) was issued as to both defendants within days after the July 9 Order.

On August 12, 2010, plaintiff filed a Motion for Default Judgment (doc. 20), pursuant to Rule 55(b)(2), Fed.R.Civ.P. In that Motion, PNCEF requested entry of default judgment against defendants in the total amount of $145,675.39, as well as a judgment authorizing it "to enter

upon the property of Defendants and re-take possession of the Equipment." (Doc. 20, at 4.) On September 10, 2010, the undersigned entered an Order (doc. 21) holding that PNCEF was entitled to entry of default judgment against both Hendricks Building and Hendricks Companies because (i) defendants had failed to appear or otherwise acknowledge the pendency of this lawsuit for more than three months after being served with process; (ii) through their default, defendants had admitted all well-pleaded factual allegations in the Complaint; and (iii) those factual allegations were sufficient to establish defendants' liability to PNCEF on theories of breach of contract (Count One) and open account (Count Two).

That said, the September 10 Order directed plaintiff to make a supplemental evidentiary showing with respect to damages. That Order explained that, even in the default judgment context, "it remains incumbent on plaintiff to prove the amount of damages to which it is entitled." *PNCEF, LLC v. Hendricks Bldg. Supply LLC*, --- F. Supp.2d ----, 2010 WL 3672257, *4 (S.D. Ala. Sept. 10, 2010). Although PNCEF had shown that it was entitled, under the relevant contractual provisions, to recover both the Stipulated Loss Value (a defined term in the lease agreement) and its reasonable attorney's fees as part of a default judgment award against defendants, plaintiff had failed to make a sufficient evidentiary showing to fix either of these types of damages. As the September 10 Order pointed out, "[r]ather than merely *telling* the Court in summary fashion what its damages are, a plaintiff seeking default judgment must *show* the Court what those damages are, how they are calculated, and where they come from …." *Id.* at *5. Plaintiff's Supplemental Motion for Default Judgment (doc. 24) represents its attempt to correct these deficiencies in proof, and to set forth the evidentiary basis for the specific damages amounts sought.[1]

---

[1] The defaulted defendants have received repeated notice of the pendency of these default proceedings. For example, the Clerk's Office mailed a copy of the Clerk's Entry of Default (doc. 19) to both defendants back on July 13, 2010, at the address where service of process was achieved. And plaintiff served copies of its Supplemental Motion for Default Judgment on defendants via mail and e-mail on October 7, 2010. All indications are that defendants are fully aware that default proceedings are ongoing, and are simply choosing not to participate. That fact, when coupled with the circumstances identified in the September 10 Order, clearly establishes the propriety of entry of default judgment in this matter.

## II. Analysis of Damages Issues.

### A. *Stipulated Loss Value.*

As noted *supra*, the September 10 Order made a specific finding that PNCEF is entitled to recover the "Stipulated Loss Value" from defendants in this action. The term "Stipulated Loss Value" is defined in the lease agreement as "an amount equal to: (i) the total of all Rent and any other amounts, if any, due with respect to such Equipment as of the date of payment of the Stipulated Loss Value, plus (ii) all future Rent with respect to such Equipment, plus (iii) the then estimated FMV of such equipment as of the end of the Initial Term of Lease for such Equipment (assuming no loss or damage)." (Doc. 1, Exh. A, ¶ 10.) In light of plaintiff's supplemental evidentiary submission, there is now sufficient record evidence to quantify each of these components.

With respect to the "total of all Rent and any other amounts, if any, due with respect to such Equipment," plaintiff's evidence shows that Hendricks Building was contractually required to make (and Hendricks Companies guaranteed) 60 monthly lease payments of $3,763.79, but that they failed to make the last 21 of those payments. (Supp. Love Decl. (doc. 24, Exh. 1), ¶¶ 5-7 & Exhs. A & B.) Those unpaid rent amounts total **$79,039.59**, which is properly included in the Stipulated Loss Value. (Supp. Love Decl., ¶ 6.)[2] Moreover, there are "other amounts" due on the equipment. In particular, the lease agreement provides for late charges of 10% for any lease payment not made within 15 days of its due date. (Doc. 1, Exh. A, ¶ 6.) Plaintiff's evidence is that defendants owe late charges for each of the seven payments from December 2008 through June 2009, totaling **$2,634.66** (or 7 late fees at $376.38 each). (Supp. Love Decl., ¶ 8 & Exh. A.) That figure is also properly included in the Stipulated Loss Value.

---

[2] Hendricks Building did pay two additional months' rent in advance as a security deposit at the outset of the lease. (Doc. 1, Exh. A, at 1; Supp. Love Decl., at Exh. B (reflecting total lease payments received equating to 41 months' rent).) But defendants do not get credit for that advance rent payment because the lease agreement specified that "Security Deposits will be refunded upon expiration of the Lease ***provided Lessee is not in default*** of any of the terms and conditions of the Lease." (Doc. 1, Exh. A, at 1 (emphasis added).) Here, Hendricks Building was in fact in default; therefore, it is not entitled to refund of those security deposits and does not receive an offset for those advance payments in computing the Stipulated Loss Value under the lease agreement.

Another element of the Stipulated Loss Value is "the then estimated FMV of such equipment as of the end of the Initial Term of Lease for such Equipment (assuming no loss or damage)." (Doc. 1, Exh. A, ¶ 10.) The definition of "FMV" (or "Fair Market Value") is also specified in the lease agreement as follows: "Lessor will use Lessor's judgment to determine the Equipment's FMV. FMV shall mean the retail not wholesale FMV determined solely by the Lessor." (*Id.*, ¶ 9.) The record reflects that PNCEF representative Tara Love assigned a Fair Market Value of $45,000 to the equipment in this case based on her scrutiny of web sites for the "going price" of such equipment on the open market, her consultation with other PNCEF employees who possess expertise in valuations of such equipment, and her own 8.5 years of experience in the financing, litigation, sale, resale and collection of construction and manufacturing equipment. (Supp. Love Decl., ¶¶ 9-12.) Such evidence, coupled with the lease agreement's provision that FMV shall be "determined solely by the Lessor," reflects an adequate factual predicate for fixing an estimated FMV to the equipment of **$45,000** and including that figure in the Stipulated Loss Value calculation.

In light of the foregoing, the Court finds that plaintiff has made a sufficient evidentiary showing to support a total valuation of **$126,674.25** ($79,039.59 in unpaid rent, plus $2,634.66 in late charges, plus $45,000.00 in fair market value) for the Stipulated Loss Value category of damages in the default judgment.

### B. Attorney's Fees.

Next, the Court turns to plaintiff's proof of attorney's fees. The lease agreement provides that Hendricks Building "agrees to pay all of Lessor's costs of enforcing Lessor's rights against Lessee … including reasonable attorney's fees." (Doc. 1, Exh. A, ¶ 14.) On that basis, the September 10 Order made a specific finding that PNCEF could recover attorney's fees as part of the default judgment; however, based on the express language of the lease agreement, that Order made a key distinction between actual attorney's fees incurred by PNCEF and an inflated figure exceeding actual PNCEF expenditures. *See PNCEF*, 2010 WL 3672257, at *5 ("The Court's task is not to ascertain what a hypothetically reasonable attorney's fee might be and to award that amount to plaintiff, but is instead to determine PNCEF's *actual* attorney's fee incurred in enforcing its rights against Hendricks Building in this matter, and to ascertain whether that actual figure (not a hypothetical fee untethered to PNCEF's actual financial commitment) is a 'reasonable attorney's fee' within the ambit of Paragraph 14 of the lease agreement."). Because

plaintiff's original submission was inadequate to evaluate PNCEF's actual attorney's fees, the September 10 Order afforded plaintiff an opportunity to supplement its submission.

PNCEF's threshold response is to seek reconsideration of the Court's interpretation of Paragraph 14 of the lease agreement that only actual attorney's fees are compensable. PNCEF insists that Paragraph 14 does not confine an attorney's fee award to actual fees, but instead allows plaintiff to recover a windfall of any "reasonable" amount regardless of how (or if) that figure correlates to plaintiff's actual fee obligations.[3] This argument is not persuasive. As an initial proposition, Paragraph 14 of the lease agreement suffers from an obvious and glaring drafting error because a clause was inserted in the wrong place, so as to render the preprinted wording jumbled and virtually nonsensical as is.[4] After correcting this obvious drafting/editing mistake (see footnote 4), Paragraph 14's wording concerning attorney's fees is that Hendricks Building "agrees to pay all of Lessor's costs of enforcing Lessor's rights against Lessee, including reasonable attorney's fees." The Court expressly finds that Paragraph 14 makes sense only if it is read in this manner. As such, the plain language of Paragraph 14 provides that PNCEF may recover its "reasonable attorney's fees" only insofar as such fees are included in "Lessor's costs of enforcing Lessor's rights against Lessee." In other words, only <u>actual</u> fees and costs are recoverable. To the extent that PNCEF now attempts to exploit its own patent drafting error in Paragraph 14 to construe the ambiguity created thereby to its own advantage and to the

---

[3] To illustrate the implications of this argument in practice, PNCEF has incurred actual attorney's fees of $5,340.00, yet it requests a fee award of some $19,001.14, nearly quadruple its out-of-pocket outlay. Under any rational reading of Paragraph 14, the nearly $14,000 surcharge that plaintiff requests under the guise of "reasonableness" is sheer overreaching.

[4] In particular, the relevant portion of Paragraph 14 lists among PNCEF's remedies in case of lessee's default the following: "(iv) Lessor or it's [*sic*] agent may peacefully ***remedy available at law or in equity. Lessee agrees to pay all of Lessor's costs of enforcing Lessor's rights against Lessee***, repossess the Equipment without court order and Lessee will not make any claims against Lessor for damages or trespass or any other reason; and (v) Lessor may exercise any other right or including reasonable attorney's fees." (Doc. 1, Exh. A, ¶ 14 (emphasis added).) As worded, subsections (iv) and (v) are inscrutable. The <u>only</u> way this language could possibly make sense is if the highlighted language above is cut and pasted after the words "Lessor may exercise any other right or" in subsection (v). That is what this Court did in the September 10 Order, and the Court stands by that approach here. The alternative would be to declare Paragraph 14 illegible and illogical and to deny plaintiff any remedy thereunder.

detriment of the lessee, the Court cannot agree.  For these reasons, the Court declines PNCEF's request to construe Paragraph 14 in a manner that confers a windfall on it by awarding it unaccrued attorney's fees for which it is not liable based on confusion created by PNCEF's own poor drafting in its preprinted form lease agreement.[5]

As a fallback position, PNCEF urges the Court to grant the $19,000+ attorney's fee award on the theory that PNCEF may incur considerable enforcement and collection costs going forward.  But this Court cannot guess about damages on default judgment, and it could not award future attorney's fees in this case without engaging in sheer speculation divorced from any record facts.  There is no evidence from which one could surmise how easy or difficult, efficient or time-consuming, any collection efforts may be in this case.  *See, e.g., Farm Credit of Northwest Florida, ACA v. R & B Const. of South Alabama, Inc.*, 2009 WL 4456340, *5 n.7 (S.D. Ala. Nov. 24, 2009) ("To say that collection on default judgments is frequently an expensive endeavor is not to say that there is any particular reason to believe it will be expensive in this case.  No such reason has been identified.").  Nor can the Court hinge a five-digit prospective attorney's fee award on evidence that PNCEF <u>may</u> elect to hire a collection agency to collect the default judgment in that case, and that any collection agency <u>may</u> charge a 25-30%

---

[5] To be sure, the foregoing analysis may be materially different had PNCEF presented evidence that it had agreed to pay its attorneys 15% of the total debt as a fee in this matter.  However, all evidence before the Court is that PNCEF is paying its attorneys via hourly billings, with no allowance for a fee tied to the percentage of the overall debt.  As such, plaintiff's evidence and legal argument that an attorney's fee of 15% of the fund to be recovered would have been reasonable had its attorneys assessed such a fee is of no practical import because it bears no relationship to the actual, operative fee arrangement in this case.  Again, the lease agreement that PNCEF drafted and is attempting to enforce in this case provides only that PNCEF may recover its actual "costs of enforcing Lessor's rights against Lessee," not some hypothetically reasonable figure that exceeds PNCEF's actual costs of enforcement by a factor of four.  Had PNCEF wished to do so, perhaps it could have drafted its lease agreement to specify a flat-rate attorney's fee reimbursement allowance of 15% of the unpaid debt; however, it elected to frame the attorney's fee provision in terms of actual costs instead.  This Court will not rewrite the agreement to PNCEF's advantage merely because defendants are in default and are not here to oppose it.  Nor does the Court accept as persuasive the unpublished authorities from other jurisdictions cited by plaintiff.  All of those decisions are in the default judgment context, and do not appear to have considered (one way or the other) the inherent disconnect in awarding a hypothetical fee (even one that is "reasonable" by some yardstick) that bears no relationship to the fees paid by the plaintiff when the underlying agreement confines recovery to plaintiff's actual costs and fees incurred.

contingency fee or a 15-20% upfront retainer. In the first place, there is no evidence that PNCEF actually will engage a collection agency for this debt, or that the collection agency will charge such fees in this case. In the second place, PNCEF has made pessimistic pronouncements that its prospects of recovery are dim.[6] As such, the Court questions whether any contingency fee would ever be incurred (because the contingency would never come to pass), and whether payment of any sizeable upfront fee for the collection process could be "reasonable" in the context of this case. Speculative future attorney's fees will not be awarded here.

With respect to its actual attorney's fees and costs, plaintiff has submitted evidence that it incurred attorney's fees in the amount of $5,340.00, as well as costs of $515.23 (mostly for the civil filing fee and process server fee), in enforcing PNCEF's rights against Hendricks Building and Hendricks Companies in this litigation. (Supp. Clark Decl. (doc. 24, Exh. 2), ¶¶ 7-9 & Exh. A.) Although this evidence is not presented with the clarity and detail that typifies attorney's fee requests in this District Court,[7] the Court finds sufficient evidence in the record to support a

---

[6] For example, PNCEF laments that "the judgment is likely uncollectible" and that "[t]he only realistic recovery PNC can hope for in this instance is a re-sale of the Equipment." (Doc. 24, at 12-13.) If the likelihood of collection is as negligible as PNCEF represents it to be, then why would it be reasonable for PNCEF to spend thousands of dollars to attempt the impossible? Moreover, if, as PNCEF hypothesizes, any collection agency would likely recover nothing, then PNCEF would presumably avoid paying any contingency fees to that agency because there would be no recovery from which fees could be drawn. Besides, PNCEF presents no evidence as to its recovery prospects against these defendants. There is no indication, for example, as to what assets or ongoing business activities those entities might have, or even the absence of any such assets or activities. As such, the Court has no factual basis for assessing the ease or difficulty of collection on the default judgment, and no means of fixing a reasonable estimate for the costs that PNCEF is likely to incur in that endeavor. And plaintiff's request for an award that accounts for a 25-30% contingency fee to be paid to a collection agency is in tension with plaintiff's counsel's statement that he expects the majority of his work on this file to be performed in attempting to collect the judgment. (*See, e.g.,* doc. 24, at 9, 11 & 13.) It is not clear why, and plaintiff does not explain why, PNCEF would pay for the services of both its regular counsel and a collection agency to pursue collection of the same default judgment after its entry, yet PNCEF apparently seeks recompense for both.

[7] In particular, rather than submitting detailed, itemized billing records and time entries setting forth the hours billed and tasks performed by counsel, as is customary in attorney's fee petitions, plaintiff simply submits a "ledger" showing the hours billed by each attorney on the file on each date and the associated hourly rate, devoid of descriptive verbiage. (Supp. Clark Decl., Exh. A.) Nonetheless, even on this fragmentary showing, the Court finds sufficient evidence that the hours and hourly rates billed by plaintiff's counsel (consisting of one
(Continued)

conclusion that PNCEF's claimed attorney's fees are reasonable and therefore recoverable under Paragraph 14 of the lease agreement. Accordingly, the Court will award **$5,855.23** in actual, reasonable attorney's fees and costs to plaintiff as part of the default judgment award.

### C. *Plaintiff's Request to Retake Possession of Equipment.*

Finally, plaintiff requests that the default judgment include a separate provision "permitting PNC to re-take possession of the Equipment leased to Defendants" and "expressly grant[ing] PNC the right to enter upon the property of Defendants in order to re-take the Equipment." (Doc. 20, at 4.)

The problem with this request is that PNCEF has not explained why inclusion of that equitable relief in the default judgment, cumulative of the damages award, would not effectively amount to an impermissible double recovery. As set forth above, plaintiff has requested, and the Court has found, that the default judgment award in this case will include the current retail Fair Market Value of the equipment as reasonably estimated by PNCEF. To award plaintiff both the value of the equipment, and possession of the equipment, is on its face incompatible with Alabama law. *See, e.g., Steger v. Everett Bus Sales*, 495 So.2d 608, 609 (Ala. 1986) ("The trial court could have found that Everett was entitled either to possession of the bus, or to money damages for breach of contract, but it could not grant both forms of relief. To give Everett both possession of the bus and money damages would be to give it a double recovery. We cannot sanction such a result."); *Evans v. First Nat'l Bank of Jasper*, 9 So.3d 488, 489 (Ala.Civ.App. 2008) ("to award to the Bank both money damages and possession of the vehicle or the vehicle's alternate value would allow the Bank a double recovery, which is impermissible"); *see generally E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 297, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002) ("it goes without saying that the courts can and should preclude double recovery by an individual") (citations and internal quotation marks omitted); *Ex parte Burnett*, 978 So.2d 729, 732 (Ala. 2007) ("Alabama law generally bars double recoveries, and, although a party is entitled to full compensation for his injuries, … he can gain but one satisfaction.") (citations and internal

---

attorney expending 23.7 hours at $200 per hour, and another attorney expending 2.0 hours at $300 per hour) were reasonable in light of the work performed on this matter in terms of preparing and filing the pleadings, preparing and filing default and default judgment papers, and preparing and submitting plaintiff's damages supplement.

quotation marks omitted). Accordingly, this Court will not effectively grant PNCEF a double recovery by including both a damages award for the value of the equipment and a directive that PNCEF is entitled to possession of the equipment as part and parcel of the same judgment.

Of course, nothing herein is intended to curtail in any way plaintiff's access to the full panoply of post-judgment remedies available under Alabama law and Rule 69(a)(1) of the Federal Rules of Civil Procedure, in collecting on the default judgment.

### III. Conclusion.

For all of the foregoing reasons, it is hereby **ordered** that plaintiff's Motion for Default Judgment (doc. 20) and Supplemental Motion for Default Judgment (doc. 24) are **granted in part**, and **denied in part**. A default judgment will be entered in favor of plaintiff, PNCEF, LLC, and against defendants, Hendricks Building Supply, LLC and Hendricks Companies, Inc., jointly and severally, in the total amount of **$132,529.48** (including **$126,674.25** for the Stipulated Loss Value under the subject lease agreement, plus **$5,855.23** in actual, reasonable attorney's fees and costs incurred by plaintiff in enforcing its rights under the lease agreement).

A separate default judgment will enter.

Because this Order and the accompanying Default Judgment resolve all remaining issues against all remaining parties herein, the Clerk's Office is **directed** to close this file for administrative and statistical purposes.

DONE and ORDERED this 8th day of November, 2010.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE